JUDGE LYNCH

08 CV 00593

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: SEETHA RAMACHANDRAN (SR-0886)
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2546



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                  :    Verified Complaint

       -v.-                              :

ALL FUNDS ON DEPOSIT AT GLOBAL BANK
OF COMMERCE, ANTIGUA, ACCOUNT NUMBER       :
█████47-11, HELD IN THE NAME OF
ASTRA HOLDINGS INC., AND ALL FUNDS         :
TRACEABLE THERETO;

ALL FUNDS ON DEPOSIT AT BANK OF
MONTREAL, CANADA, ACCOUNT NUMBER
█████7937, HELD IN THE NAME OF
HUMBERTO JOSE CASTRO-TIRADO,
AND ALL FUNDS TRACEABLE THERETO;

CONTENTS OF SAFE DEPOSIT BOX
NUMBER 214, IN THE NAME OF
HUMBERTO JOSE CASTRO CARRERA,
AT BANK OF AMERICA
401 LINCOLN ROAD, MIAMI, FLORIDA
33139,

                 Defendants in rem.
- - - - - - - - - - - - - - - - - - -x

       Plaintiff United States of America, by its attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

I. <u>NATURE OF THE ACTION</u>

1. This is an action by the United States of America seeking forfeiture of ALL FUNDS ON DEPOSIT AT GLOBAL BANK OF COMMERCE, ANTIGUA, ACCOUNT NUMBER ▇▇▇▇47-11, HELD IN THE NAME OF ASTRA HOLDINGS INC., AND ALL FUNDS TRACEABLE THERETO; ALL FUNDS ON DEPOSIT AT BANK OF MONTREAL, CANADA, ACCOUNT NUMBER ▇▇▇▇7937, HELD IN THE NAME OF HUMBERTO JOSE CASTRO-TIRADO, AND ALL FUNDS TRACEABLE THERETO; and the CONTENTS OF SAFE DEPOSIT BOX NUMBER 214, IN THE NAME OF HUMBERTO JOSE CASTRO CARRERA AT BANK OF AMERICA 401 LINCOLN ROAD, MIAMI, FLORIDA 33139 (collectively, the "Defendant in Rem"). The Defendants in Rem are subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6), as monies furnished in exchange for a controlled substance in violation of the federal narcotics laws and proceeds traceable to such exchanges.

II. <u>JURISDICTION AND VENUE</u>

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1345 and 1355.

3. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

III. <u>PROBABLE CAUSE FOR FORFEITURE</u>

4. This complaint arises from a DEA investigation of two large scale cocaine dealers, Humberto Castro and Mauricio Castro.

5. In or about February 2005, the Missouri highway patrol conducted a traffic stop on a vehicle traveling on the interstate highway. A search of the vehicle revealed approximately 45 kilograms of cocaine.

6. Thereafter, the DEA conducted a controlled delivery of the cocaine to Yonkers, New York. One of the individuals who picked up the cocaine began cooperating with the Government ("CW-1"). CW-1 informed the DEA, in substance and in part, of certain individuals involved in the drug organization responsible for the shipment of the 45 kilograms of cocaine, as well as multiple other shipments of kilograms of cocaine. Among other people, CW-1 identified an individual named Mauricio Castro as the Colombian source of the cocaine.

7. In or about July 2005, Mauricio Castro was shot and killed in Canada

8. After Mauricio Castro's death, Canadian law enforcement officials subsequently searched certain residences that Mauricio Castro maintained in Canada, and recovered, among other items, over $100,000 in United States currency, firearms, drug ledgers reflecting thousands of kilograms of cocaine sales, and a palm pilot containing the contact information for CW-1.

9. Approximately one week after Mauricio Castro's death, his father, Humberto Castro, was shot and killed in Colombia.

10. According to a cooperating witness working with the Royal Canadian Mounted Police among other Canadian law enforcement groups ("CW-2"), both Mauricio Castro and Humberto Castro were murdered by hitmen hired by cousins of the Castros who owed Mauricio Castro and Humberto Castro a drug debt of over $1 million.[1]

### The Antigua Account

11. Canadian law enforcement officials recovered financial documents from Mauricio Castro's residences that included bank statements sent to Mauricio Castro in Canada pertaining to a bank account numbered ▇▇▇▇47-11 held in the name of "Astra Holdings Inc." ("Astra Holdings") and maintained at Global Bank of Commerce, in St. John's, Antigua (the "Antigua account").[2]

12. Canadian law enforcement officials have arrested an associate of Mauricio Castro ("CC-1") on narcotics conspiracy charges based on a provision arrest warrant issued in this District.

---

[1] Based on Canadian arrest warrants, one of the alleged hitmen has been arrested in Canada, and one of the Castro cousins allegedly responsible for the murder has been arrested in Costa Rica.

[2] Canadian officials also located a bank statement from the Antigua account in a postal mail box registered to Mauricio Castro.

13. CC-1 is currently awaiting extradition to the United States, and has made statements to the authorities, that include, in sum and substance, the following:

   a. CC-1 opened the Antigua account at Mauricio Castro's behest to hold the proceeds of Castro's narcotics trafficking;

   b. CC-1 used a business called Universal Corporate Services ("UCS") to incorporate a shell company in Belize named Astra Holdings, with Mauricio Castro as the President, and to open a bank account in the name of Astra Holdings in Antigua at Swiss American Bank Ltd., later renamed Global Bank of Commerce.

   c. CC-1 stated that Castro maintained control of the Antigua account. The bank statements found in Castro's residence indicate that the balance in the account was approximately $1.236 million as of June 2005, just prior to Mauricio Castro's murder.

14. On or about November 9, 2007, the balance in the Antigua Account was approximately $1,307,495.70.

## The Canada Account

15. Both CW-2 and CC-1, among others, have identified Humberto Castro, Mauricio Castro's father, as the boss of the Castro Narcotics Trafficking Organization, which had contacts in Colombia for the supply of the cocaine.

16. The Government previously identified two bank accounts and a safety deposit box in Miami, Florida, held in the name of Humberto Castro (the "Miami accounts"). On or about September 25, 2006, the United States Magistrate Judge Henry Pitman granted seizure warrants for the Miami accounts, on the grounds that the accounts contained the proceeds of narcotics trafficking and currency structuring.

17. After the DEA seized the Miami bank accounts, a woman, who identified herself as the sister of Humberto Castro, contacted the DEA (the "sister"). The sister informed the DEA that her brother was a drug dealer and that his money was from drug proceeds. The sister disavowed any interest in the seized moneys. The sister further related her understanding that Humberto Castro kept additional drug moneys in Canada; she believed the moneys were held at the Bank of Canada.

18. Bank records for the seized Miami accounts show that these accounts had received at least $30,000 in wire transfers from an account held at the Bank of Montreal, Canada, numbered ███████7937 (the "Canada account").

19. Upon information and belief, the Canada account, held in the name of Humberto Jose Castro-Tirado, contained hundreds of thousands of dollars and, at the time of Humberto Castro's death, contained the Canadian dollar equivalent of approximately $340,000.

## The Safe Deposit Box

20. Subsequently, on August 2, 2007, the United States Magistrate Judge Henry Pitman granted a seizure warrant for the CONTENTS OF SAFE DEPOSIT BOX NUMBER 214 (the "Safe Deposit Box"), held in the name of Humberto Jose Castro Carrera, which was associated with the Bank of America Account Number ▓▓▓▓2768, on the grounds that the Safe Deposit Box contained the proceeds of narcotics trafficking and currency structuring.

21. On August 9, 2007, the DEA served the seizure warrant at Bank of America and seized the contents of the Safe Deposit Box, which contained three rings and assorted coins and chains, valued at $8,525.00.

22. On or about October 26, 2007, Nydia Castro informed the DEA that the assets in the Safe Deposit Box was jewelry left to her from Humberto Castro. Her belief was based upon an oral assurance from Castro that "[i]f anything where to ever happen to me I am leaving this to you."

23. Upon information and belief, Humberto Castro had no known employment in Canada or the United States, nor any residency status in either country.

24. Upon information and belief, Anthony Castro, the half-brother of Mauricio Castro, tried to access the Safe Deposit Box in April 2007, but that the bank denied him access.

25. Upon information and belief, Michelle Fitzgerald, the secretary of Astra Holdings and the common-law wife of Mauricio Castro, may be traveling to Florida for the purpose of retrieving

federal narcotics laws, or proceeds traceable to such an exchange.

27. By reason of the foregoing, the Defendants in Rem became and are subject to forfeiture to the United States of America, pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendants in Rem and that all persons having an interest in the Defendants in Rem be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendants in Rem to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated:    New York, New York
          January 23, 2008

                    MICHAEL J. GARCIA
                    United States Attorney for Plaintiff
                    United States of America

By:  _____
     SEETHA RAMACHANDRAN(SR-0886)
     Assistant United States Attorney
     One St. Andrew's Plaza
     New York, New York 10007
     (212) 637-2546 (telephone)

VERIFICATION

STATE OF NEW YORK              )
COUNTY OF NEW YORK             :
SOUTHERN DISTRICT OF NEW YORK  )

DEAN BUFFALINO, being duly sworn, deposes and says that he is a Special Agent with the United States Drug Enforcement Administration ("DEA"), and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof; and that the same is true to the best of his own knowledge, information and belief.

The sources of deponent's information and the ground of his belief are official records and files of the DEA, conversations with other law enforcement officials, and information obtained directly by deponent during an investigation of alleged violations of Titles 18 and 21, United States Code.

_____
DEAN BUFFALINO
Special Agent
Drug Enforcement Administration

Sworn to before me this
23rd day of January, 2008

_____
NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010

-9-